ROBERT D. BRADNER, PLAINTIFF IN ERROR, v. HARRIET ROFFSELL, ADMINISTRATRIX, DEFENDANT IN ERROR.

In an action upon a building contract, which required the certificate of an architect as a condition precedent to the liability of the owner to pay the contract price, it appeared that such certificate had not been procured and that there had been deviations from the plans and specifications in the erection of the building, notably in the substitution of a "balloon" frame for the "tie" frame contracted for. Evidence was admitted, over the owner's objection, that a balloon frame made a stronger and better house. The cause was tried upon the doctrine of *Chism* v. *Schipper*, 22 *Vroom* 1. The jury were charged that the certificate, if not waived, might be dispensed with only by proof that the certificate was withheld by fraud on the part of the architect, and that "it would be *prima facie* evidence of fraud if the architect withheld his certificate without any substantial reason for so doing" *Held* that, considering the course of the trial, this instruction must be construed as permitting the jury to find such fraud, notwithstanding conceded material variations from the contract, if, in their judgment, such variations, under the circumstances, did not afford a substantial reason for withholding the certificate and was erroneous.

On error to the Supreme Court. For opinion of Supreme Court, see *ante p.* 32.

The action was begun in the Monmouth Circuit by Harriet Roffsell, administratrix of Joseph Roffsell, deceased, against Robert D. Bradner, as builder and owner, upon a claim under the Mechanics' Lien law.

The declaration as filed contained two counts upon a building contract, under seal, made between Bradner and Joseph Roffsell, the common counts for work and labor done and materials furnished for Bradner by Joseph Roffsell in his lifetime, and other common counts for work and labor done and materials furnished for Bradner by the plaintiff. Upon demurrer the first two counts were stricken out; the general issue was pleaded to the common counts.

The Circuit Court sent the cause to the Common Pleas for trial. The trial resulted in a verdict for the plaintiff. Exceptions were taken to the admission of evidence, to the charge and refusals to charge.

Bradner sued out a writ of error from the Supreme Court, which affirmed the judgment of the Common Pleas.

Thereupon he has removed the cause here for review by this writ of error.

For the plaintiff in error, *Frank E. Bradner.*

For the defendant in error, *Hawkins & Durand.*

The opinion of the court was delivered by

MAGIE, J. The record discloses two claims on the part of the defendant in error. One claim is upon implied contracts between her intestate and the plaintiff in error, and is a claim in a representative capacity; the other is upon implied contracts between her and plaintiff in error, and is necessarily a claim in her own right. As the judgment upon each of these claims must be different, it was obviously irregular to join them in one action, and the Court of Common Pleas erred in refusing to compel the administratrix to elect between the inconsistent claims and purge the record of the improper counts.

The judgment is entered in favor of defendant in error as administratrix. If there was no legal error in the trial, and a real question in controversy between the defendant in error as administratrix and the plaintiff in error was fairly and fully tried, and such a judgment is proper thereon, then there is ample power to amend the record by striking out the common counts framed to present her personal claim, and so to support the judgment.

But the bills of exception show that the judgment cannot be supported upon the common counts of the declaration framed to present the administratrix's claim in her representative capacity. That claim was for work and labor done and materials furnished by the intestate in his lifetime to Bradner, raising an implied contract to pay therefor. The real question in controversy between the parties was different. It arose upon an express contract under seal, made between Bradner and the intestate, which the administratrix claimed had been partly performed by the intestate before his death, and had been afterwards completed by her as his administratrix. This contract was produced and proved by the administratrix. It was not admissible on the issue made by the record and did not support the claim disclosed in the common counts. But if the real question in controversy between the parties was fairly and fully tried, and this judgment is the proper result of the trial, there is power to amend by adding pleadings presenting the issue really tried, and so to support the judgment.

At the same time I must express disapprobation of the conduct of the cause in this respect. The administratrix having made a claim and produced evidence in support thereof, which required amended pleadings, failed to ask liberty to amend. Plaintiff in error repeatedly, but in vain, appealed to the trial court to require the proper amendment. No amendment being made, he then demanded a nonsuit, on the ground that there was no evidence to support the claim which appeared in the record. This was refused, and, in my judgment, such refusal was error. The power of amend-

ment bestowed upon courts of review, and liberally exercised by them, was not intended to encourage counsel to make up a record of general pleadings and then to try the case upon evidence requiring special pleadings. When such a divergence from the record is plainly disclosed, I think it the duty of the trial court, if no amendment of the pleadings is asked for and made, to deal with the case as it appears by the record.

So the Supreme Court, in its review of this case, points out the necessity of amended pleadings and indicates its intention to allow such amendment. Yet the record comes to this court unamended, and if the judgment be affirmed here, in this condition of the record, the defendant in error may bring an action on the contract, and the record would not support a plea of former recovery by plaintiff in error.

But at the trial, plaintiff in error did not rest upon his exception to the refusal to nonsuit on this ground. He proceeded with a defence directed at the real question in controversy, disclosed by the evidence adduced by the administratrix. If, then, that question was fairly tried without error of law, the refusal to nonsuit was not injurious to him, and this court, notwithstanding the delinquency of the defendant in error in this respect, ought to permit such amendment of the pleadings to be made as will support the judgment.

Whether the administratrix was entitled to recover upon the contract made between her intestate and Bradner having been the real question tried, we are to consider whether any legal error intervened in the disposition thereof.

By the contract, the intestate had agreed to erect for Bradner upon his land a building, and Bradner had agreed to pay therefor $3,196.51, by installments, according to the progress of the work, upon a certificate of one Umbach, an architect, "to the effect that the work is done in strict accordance with drawings and specifications, and that he considers the payment properly due."

Payment of the contract price under the terms of such a contract does not become due until the condition precedent is performed by the production of the required certificate or by

satisfactory proof that such production has been waived by
the owner or excused by circumstances.

The Supreme Court has determined that the production of
such a certificate will be excused if the architect has fraudu-
lently withheld it, although the owner is not in collusion with
him or a partaker of his fraud. *Chism* v. *Schipper*, 22
*Vroom* 1.

The case before us was tried upon the doctrine laid down
by the majority of the Supreme Court in Chism *v.* Schipper.
The arguments and briefs of counsel before us have not
assailed that doctrine, and, for the purposes of this case, it
may be deemed not to be in question.

It appears by the bills of exceptions that the administra-
trix failed to produce the required certificate of Umbach, but
claimed that the evidence established a waiver of its produc-
tion by Bradner, or an excuse for its production, because of
the fraud of the architect.

The waiver was claimed upon a letter of Bradner's counsel,
enclosing a list made by the architect of alleged omissions
and deviations from the contract, with the amount he claimed
should be allowed therefor by way of deduction from the con-
tract price ($376.88), and proposing to pay all the contract
price except that sum. The enclosure made by the architect
is not printed. If it amounted to a certificate of completion
in all respects except those for which an allowance was
claimed, it had no binding effect upon the parties. *Mackin-
son* v. *Conlon*, 26 *Vroom* 564. The waiver, if any there was,
grew out of the letter, and was properly confined by the
trial court to so much of the unpaid price as exceeded the
deduction claimed.

But the verdict was for the whole of the unpaid price, and
must obviously have rested upon the fraud of the architect in
withholding a complete certificate.

In presenting that subject to the jury, the trial court
charged that " if not waived it [the certificate of the architect]
may be dispensed with only by proof that the certificate was
withheld by fraud on the part of the architect. It would be

*prima facie* evidence of fraud if the architect withheld his certificate without any substantial reason for so doing." An exception was taken to the last sentence of this instruction, and an assignment of error is based thereon.

In the Supreme Court, this instruction was justly deemed open to objection, because the use of the word "substantial" tended to substitute the judgment of the jury for the decision of the architect.

In Chism *v.* Schipper, the learned Chief Justice, who delivered the opinion of the majority of the court, carefully pointed out the need of watchful judicial supervision over the determination of juries on this question, and declared that the architect's conduct could not be impeached for want of skill or knowledge, or because his judgments do not agree with those of others.

To instruct a jury that they may find fraud from the withholding of such a certificate without a substantial reason, is to permit them to determine what are substantial reasons, and if in their judgment there are none, then, though the architect's judgment may be honestly otherwise, to convict him of fraud.

This objection to the instruction under review was deemed by the Supreme Court to have been obviated and rendered harmless by other parts of the charge which pointed to evidence tending to show that the architect had expressed satisfaction with the building and promised a certificate, and to the express statement that the court would not charge that there was evidence of fraud, nor that there was no evidence of fraud, but would leave that question to the determination of the jury. This was considered to show that the case was left to the jury solely as matter of fraud.

I quite agree that the case was thus left to the jury, but am unable to perceive how that cured the erroneous direction that fraud might be inferred upon improper or insufficient grounds. In my judgment this instruction was intended, and must have been understood by the jury to permit such an inference.

The bills of exception show that there were some deviations in the construction of the building from the terms of the con-

tract, which were conceded to have taken place. The most material of such conceded deviations was the substitution of a " balloon " frame for the " tie " frame called for by the contract. There was a contest over other deviations and omissions claimed by Bradner. But taking what was conceded to be true, it is obvious that a certificate that the building had been completed in strict accordance with the drawings and specifications would have been untruthful.

The cause was plainly tried upon the theory that if the building erected was as good as or better than it would have been if erected according to the contract, it would charge the owner with liability upon the contract. This appears from the admission of evidence offered by defendant in error in making her case, and objected to by the plaintiff in error, to the effect that a balloon frame made a stronger and better house than a tie frame. The theory is manifestly erroneous, for the owner is entitled to have the house he wanted and contracted for, and the contractor cannot satisfy his contract by erecting a house materially different, even though it be better.

Taking the course of the trial in consideration, the construction which this instruction must bear is this, viz., that the jury might find fraud in the withholding of the certificate by the architect, notwithstanding conceded material variations from the contract, if in their judgment such variations, under the circumstances, did not afford a substantial reason for not giving the certificate.

With respect to the deviation from the contract plan which has been instanced as the most material of those conceded to have occurred, I have not overlooked the fact that the architect learned of it during the erection of the building. At what stage of the work he first learned it, is not clear, but it may be inferred that it was after the frame was up and covered. It appears that he took no steps to stop the work. It does not appear that he had power to do so.

But that deviation occurred during the lifetime of the contractor, and the uncontradicted evidence of the architect was

that, when he discovered it, he brought it to the notice of the contractor, who promised to make a proper deduction from the contract price.

It is argued that the architect, by this conduct, gave permission to proceed with the work as if there had been no deviation, and so his refusal to give a final certificate was fraudulent.

If the architect had been the agent of the owner, he might have agreed with the contractor for the substitution of a balloon for a tie frame, or he might have ratified such substitution by subsequent conduct, and in either case he would have bound his principal.

But the architect was not agent of the owner, but an arbiter between him and the contractor. He possessed no power to alter the contract or to permit it to be departed from. If he had agreed with the contractor that the latter might deviate from his contract and erect the building differently, and that notwithstanding such deviation he would certify to the work as performed according to the contract, he would, in the absence of the consent of the owner, have been guilty of fraud, but it would not have been a fraud upon the contractor, who would have been *in pari delicto*, but upon the owner.

The evidence did not justify nor was there any contention that the owner had consented to that or any other deviation from the contract plans and specifications. The conduct of the architect, after knowledge of the particular deviation from the contract now under consideration, did not affect the owner. Nor did it excuse the contractor from the production of the architect's certificate. There is nothing in the evidence of the architect's knowledge of this particular deviation to mitigate the error in the instruction to the jury on the question of fraud.

Without considering other questions raised, I shall, for the error before pointed out, vote to reverse the judgment below.

*For affirmance*—None.

*For reversal*—The Chancellor, Dixon, Magie, Reed, Bogert, Brown, Krueger, Sims, Smith. 9.