[Civ. No. 22921. Fourth Dist., Div. One. Jan. 26, 1984.]

ARTHUR L. SACHS, INC., Cross-complainant and Appellant, v.
CITY OF OCEANSIDE et al., Cross-defendants and Respondents.

COUNSEL

Peter P. Gamer for Cross-complainant and Appellant.

Higgs, Fletcher & Mack and Gregg C. Sindici for Cross-defendants and Respondents.

## Opinion

**STANIFORTH, J.**—Plaintiff Oceanside Unified School District (District) filed a complaint against Arthur L. Sachs, Inc. (Sachs), seeking various forms of relief arising out of the sale and purchase of real property in Oceanside, California. Sachs filed a cross-complaint and a first amended cross-complaint against the District. Upon trial, judgment was entered against Sachs based upon his failure to comply with certain provisions of the claims statute. Sachs filed a notice of appeal. Thereafter an agreement was reached, the appeal was dismissed and the action reinstated on the civil active list. An at issue memorandum was filed on September 29, 1978. One month later Sachs dismissed his original attorney and substituted in his present counsel. A second trial date (June 4, 1979) was assigned and a continuance stipulated for trial on February 4, 1980. On November 16, 1979, Sachs filed a motion to file a second amended cross-complaint. The court denied the motion and Sachs thereafter agreed the judgment be entered against him so that this appeal might be pursued. Sachs contends the trial court abused its discretion in refusing to grant him leave to file the second amended cross-complaint.

### Facts

Sachs asserts the District superintendent and its counsel, Merville Thompson, agreed to supply Sachs' counsel, John Stanton, with the District's expert appraisals of the real property. Thompson assured Stanton if the appraisals were available they would be produced, but Stanton never received any appraisals. When new counsel (Peter P. Gamer) was substituted for Sachs, he asked Thompson for copies of all appraisals. Gamer waited, heard nothing, received no appraisals. He renewed his request, waited two more months, heard nothing, then demanded the appraisals, but again he heard nothing. Gamer sent a letter on July 6, 1979, asking for the appraisals.

On August 27, 1979, Gamer received a copy of the first of the appraisal reports. This appraisal indicated a market value of $96,000 for the subject property. According to Sachs, this appraisal was significant because it was uncontradicted proof an agent on behalf of the District (Roderic V. Moore) perpetrated fraud upon Sachs by representing the District's appraisers had valued the land at $85,000 when in fact it was valued at $96,000. Sachs'

sales price to the District had been based upon the $85,000 figure. Gamer then sought to take Moore's deposition to confirm the fraud before he moved to amend the cross-complaint. Toward the end of the Moore depositions, *Thompson handed over a second appraisal to Gamer* showing the property's market value at *$98,600.* Moore's testimony confirmed the allegations of misrepresentation and concealment. On the basis of these newly discovered facts, Sachs sought to file a second amended cross-complaint asking the contract for the sale and purchase of the real property be rescinded on the basis of this newly discovered evidence of fraud.

## DISCUSSION

### I

The California Supreme Court, in *Dos Pueblos Ranch & Imp. Co.* v. *Ellis* (1937) 8 Cal.2d 617 [67 P.2d 340], set forth the basic rule applicable to the trial court's authority in determining a motion to file an amended pleading. ■ "No rule is more firmly established in this state than that which holds that the amendment of pleadings is within the sound discretion of the trial court. [Citations.] Where such discretion has been exercised by a trial court, a reviewing court will not disturb its action unless the record shows a *manifest or gross* abuse of discretion. [Citation.]" (*Id.,* at p. 622; italics added.)

■ The District asserts there is no abuse of discretion here because the proposed amendment was brought on the eve of trial and this infirmity was compounded by the fact the motion was made more than four years after the original cross-complaint was filed, more than two years after Attorney Gamer was substituted in and more than three months after Sachs' counsel was provided copies of the appraisals.

The trial court offered several reasons to support the denial. First, the case, pending more than four years, was based upon transactions occurring nearly seven years before, thus it was a most stale transaction. Second, the motion was brought on the eve of trial and set forth a different theory of recovery: The trial court regarded this as prejudicial not only to the District but to the court. Third, Sachs had equal opportunity to obtain the information contained in the appraisal because Sachs was an experienced land developer with immediate access to data regarding land values.

We cannot agree with the trial court, because the delays were the direct result of the District counsel's failure to deliver discovery items to which Sachs was clearly entitled. The District offers a whole series of excuses for its failure to deliver the appraisals until shortly before trial and then under pressure of a deposition, but none justify the trial court's denial of the

opportunity to amend the cross-complaint on the basis of the new matters discovered in these two appraisal documents.

The District, as a defense, points to the failure of Sachs' counsel to comply with certain procedural matters. These issues were not raised in the trial court and easily could have been. The District's argument that Sachs, an experienced broker, would have access to appraisal figures, misses the point if the charge is fraud. *Sachs' pleading says the District misrepresented the appraised price of this property.* The fact Sachs may have had access to other appraisals or could have appraised the property himself does not excuse concealment and actual misrepresentation by the District.

## II

The District contends it, as a public entity, is entitled to absolute immunity for the alleged fraudulent representations under Government Code section 818.8: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

The Legislative Committee Comment-Senate states "This section provides public entities with an absolute immunity from liability for negligent or intentional misrepresentation."

In support of this broad proposition, District cites *Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401, 419 [123 Cal.Rptr. 669]. Schonfeld's first cause of action was for "fraud and misrepresentations." A demurrer was properly sustained without leave to amend "as the city was *immune from the tort liability alleged* pursuant to Government Code section 818.8." (*Id.,* at pp. 419-420; italics added.)

The flaw in District's argument is it fails to take account of Government Code section 814: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." (§§ 814 and 818.8 are both in part II.)

The Legislative Committee Comment-Senate on this section was: "The doctrine of sovereign immunity *has not protected public entities in California from liability arising out of contract.* This section makes clear that this statute has no effect on the contractual liabilities of public entities or public employees.

"This section also declares that the provisions of this statute relating to liability of public entities and public employees have no effect upon what-

ever right a person may have to obtain relief other than money or damages. . . ." (Italics added.)

In *E. H. Morrill Co.* v. *State of California* (1967) 65 Cal.2d 787, 793 [56 Cal.Rptr. 479, 423 P.2d 551], the state asserted a cause of action for fraudulent misrepresentation would not lie. The Supreme Court said: "Section 814 of the code provides, however, that nothing in the Tort Claims Act 'affects liability based on contract. . . .' In *Souza & McCue Constr. Co.* v. *Superior Court, supra,* 57 Cal.2d 508 [20 Cal.Rptr. 634, 370 P.2d 338], plaintiff alleged as the basis for one cause of action that the public entity knew of unstable soil conditions and that the entity intended to induce a lower bid by the misrepresentation. Another cause of action was based on the same allegations, but did not assert that the entity intended to mislead bidders. The public entity asserted that the 1961 'moratorium' legislation, since repealed, barred the complaint. In holding that it did not, this court stated: '[W]e are of the view that Souza's right of action is in no way dependent upon *Muskopf* . . . nor is it in any way affected by the 1961 legislation relating to governmental immunity. *When the state makes a contract . . . it is liable for a* [italics ours] *breach of its agreement . . . and the doctrine of governmental immunity does not apply.* [Citations.] . . . *The fact that a breach is fraudulent does not make the rule* [allowing recovery for extra work caused by a misrepresentation] inapplicable. [Citations.] Souza's proposed pleading states *causes of action in contract on the basis of the alleged fraudulent breach* by Salinas.' (Italics added.) (57 Cal.2d at pp. 510-511.)

"Plaintiff may thus amend its complaint to allege that the state intended to induce reliance on its misrepresentation of conditions, if it is so inclined. (See *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487-488 . . . .)" (65 Cal.2d at pp. 793-794.)

The Supreme Court reiterated the *Souza-Morrill* rule in *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 293-294 [85 Cal.Rptr. 444, 466 P.2d 996]: "A fraudulent concealment often composes the basis for an action in tort, but tort actions for misrepresentation against public agencies are barred by Government Code section 818.8. *Plaintiff retains, however, a cause of action in contract.* 'It is the general rule that by failing to impart its knowledge of difficulties to be encountered in a project, the owner will be liable for misrepresentation if the contractor is unable to perform according to the contract provisions.' (*City of Salinas* v. *Souza & McCue Construction Co.* (1967) 66 Cal.2d 217, 222 . . . (disapproved on other grounds in *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 14 . . .).) As explained in *Souza & McCue Construction Co.* v. *Superior Court* (1962) 57 Cal.2d 508, 510-511 . . .: 'This rule is mainly

based on the theory that the furnishing of misleading plans and specifications by the public body constitutes a breach of an implied warranty of their correctness. The fact that a breach is fraudulent does not make the rule inapplicable.' (See also *E. H. Morrill Co.* v. *State of California, supra,* 65 Cal.2d 787, 793-794; *John McShain, Inc.* v. *United States* (Ct.Cl. 1969) 412 F.2d 1281.)

"In transactions which do not involve fiduciary or confidential relations, *a cause of action for non-disclosure of material facts may arise* in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) *the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff;* (3) *the defendant actively conceals discovery from the plaintiff.*" (*Ibid.*; fns. omitted; italics added.)

And in *A. Teichert & Son, Inc.* v. *State of Cal.* (1965) 238 Cal.App.2d 736, 755 [48 Cal.Rptr. 225] (disapproved on other grounds in *Morrill, supra,* at p. 792), the appeal court held: "If the contracting agency furnishes inaccurate project information, such as soil reports, *as a basis for the bids,* it may be liable for damages on a breach of warranty theory." (See also *Wiechmann Engineers* v. *State of California* ex rel. *Dept. Pub. Wks.* (1973) 31 Cal.App.3d 741, 749 [107 Cal.Rptr. 529]; *Welch* v. *State of California* (1983) 139 Cal.App.3d 546, 550, 552 [188 Cal.Rptr. 726].)

Sachs' action for rescission of the contract albeit based on mistake/fraud is still an action based on a contract. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, p. 578.) ■ A plaintiff who contracts in reliance on the fraud of a defendant may either elect through contract remedy restitution based upon rescission and damages (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, pp. 984-985) or both restitution and consequential damages. (*Runyan* v. *Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316-317 [85 Cal.Rptr. 138, 466 P.2d 682, 41 A.L.R.3d 1422]; Civ. Code, § 1692.)

■ Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. (*Voth* v. *Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353, 356 [128 Cal.Rptr. 608].) If unclear the action will be considered based on contract rather than tort. (*Id.,* at p. 357.)

■ In the final analysis we look to the pleading to determine the nature of plaintiff's claim. An examination of Sachs' proposed second amended cross-complaint shows it is for "recission and restitution." Count one al-

leges a written contract to sell 14.26 acres of real property to the District. Sachs alleges he entered into the contract suffering from a "unilateral mistake" of a material fact known but concealed by the District.

Count two alleges the District falsely represented it had been informed by two independent appraisers the land value was only $85,000. The appraisals, in fact, were for $100,000 and the representations, allegedly, were made to deceive Sachs and induce him to enter the contract. The prayer is for "rescission and restitution." These pleadings, on their face, present a cause of action based on contract. The doctrine of governmental immunity encompassed by Government Code section 818.8 does not apply and is no bar to the proposed amendment to the cross-complaint.

### III

Finally, the District argues there was yet another basis for denying Sachs' motion: the proposed amendment was demonstrably without merit, the relief sought was legally impossible. (See *Kenworthy* v. *Brown* (1967) 248 Cal.App.2d 298, 303 [56 Cal.Rptr. 461]; *Rogers* v. *Ulrich* (1975) 52 Cal.App.3d 894, 899 [125 Cal.Rptr. 306].) █ It is the District's position Sachs cannot recover because he is seeking to recover for a unilateral mistake. Again, this argument misses the thrust of the proposed amendment. The amendment alleges misrepresentation of a material fact which induced Sachs to enter the contract. Sachs asserts the District knew the truth about the appraisal figures but Sachs did not.

█ The leading case of *Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 748 [192 P.2d 935], declares: "An independent investigation or an examination of property does not preclude reliance on representations where the falsity of the statement is not apparent from an inspection, or the person making the representations has a superior knowledge, or the party relying thereon is not competent to judge the facts without expert assistance. [Citations.]"

As set forth in 4 Witkin, Summary of California Law (8th ed. 1974) Torts, section 476, page 2735: "The rule of unjustifiable reliance . . . is seldom applied in practice, for the old notion of 'caveat emptor' is thoroughly discredited. There is ordinarily no duty to investigate, and *contributory negligence* of the plaintiff is not a defense to the *intentional tort* of fraud." █ It cannot be said as a matter of law Sachs was precluded from relying upon the statements represented to have been made to him. Fraud is peculiarly a question of fact. The District's argument Sachs' cause of action was based upon unilateral mistake does not square with the factual allegations. Sachs alleges he agreed to the lower figure ($85,000) because

Moore told him that was the District's appraised value and the District would pay no more.

 The failure or refusal of the District's counsel to promptly turn over significant documents—which we assume to be true for purposes of this proceeding—supports Sachs' contention of fraud and offers a most rational reason why the proposed amendment was late. These pleaded facts, coupled with no showing of prejudice to the District,[1] demonstrate the trial court abused its discretion in denying Sachs the right to amend his action.

Judgment reversed.

Cologne, Acting P. J., and Wiener, J., concurred.

---

[1]Discovery had been completed when the motion to amend was heard.